IRONS HOME BUILDERS, INC. and
Thomas G. Irons, Plaintiffs,

.v.

AUTO–OWNERS INSURANCE
COMPANY, Defendant.

Civ. A. No. 92–77318.

United States District Court,
E.D. Michigan, S.D.

Dec. 22, 1993.

Ernest I. Gifford, Theresa A. Orr, Ellen S. Cogen, Gifford, Groh, Sprinkle, Anderson & Patmore, P.C., Birmingham, MI, for plaintiffs.

Gary W. Caravas, Caravas & Hildinger, Troy, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Plaintiffs Irons Home Builders, Inc. and Thomas Irons brought this breach of contract action against defendant Auto–Owners Insurance Company based on the court's diversity jurisdiction. Plaintiffs seek damages for defendant's failure to defend and indemnify them in a lawsuit allegedly covered by the liability insurance policy that they purchased from defendant. Before the court are the parties' cross motions for summary judgment.

### I. Background

Plaintiff Irons Home Builders ("Irons") is a Florida corporation that designs and builds single family homes. Plaintiff Thomas Irons is the president of the company. Defendant Auto–Owners is a Michigan insurance company. Irons purchased two consecutive policies of liability insurance from defendant. The first policy covered bodily injury or property damage, and was effective from August 8, 1987 to August 8, 1988.[1] The second insurance policy, the subject of this suit, covered

---

1. Both parties agree that the 1987–1988 policy did not provide coverage for the allegations in the underlying lawsuit.

liability for personal or advertising injury. It was effective from August 8, 1988 to August 8, 1989. The policy defines advertising injury as follows:

"Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

The policy only applied to advertising injury, if the injury was caused by an offense committed in the course of advertising the insured's goods, products, or services.

The 1988–1989 policy also provided for certain exclusions. The insurance did not apply to advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." In addition, the insurance did not apply in cases where the advertising injury arose "out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured."

On April 21, 1989, Star Construction of Port Charlotte, Inc. ("Star"), a Florida construction company, brought a copyright infringement action against Irons in the United States District Court for the Middle District of Florida, alleging that Irons had copied a set of house plans and then built three houses based upon those plans. Star alleged that an individual by the name of C.B. Arthur visited a model of Star's "Caribbean" style copyrighted home. At some point before May 31, 1988, Arthur then asked Irons to draft plans for and build a house for him just like Star's model. The complaint alleges that at a date prior to July 2, 1988, the Charlotte County Building Department approved construction of the Arthur home based upon an application and plans submitted by Irons. The complaint also cites the construction of two additional houses on Great Falls Avenue that utilized the Caribbean design. Approval was granted for the construction of these two homes sometime before November 30, 1988. The design and construction of the three Caribbean homes by Irons was the basis for Star's complaint, which sought relief for infringement of copyright and unfair trade practices.

On June 20, 1990, more than a year after Star filed its complaint, Irons notified Auto–Owners of the pending lawsuit.[2] One week later, Auto–Owners informed Irons that it would investigate Star's lawsuit in order to determine if it was covered by either of the 1987–1988 or 1988–1989 policies. On August 22, 1990, Auto–Owners informed Irons that it believed that it had no duty to defend the lawsuit and that notice of the suit was late.

Trial began the next month on September 27, 1990. After Star presented its case, Irons made a settlement offer of $17,500 which was accepted. On February 5, 1991, the district court in Florida entered a final judgment signed by both Star and Irons. Based on a joint motion, the court found that Irons had infringed Star's copyright by making copies of Star's house plan and then using the copied plans to construct three houses.

On March 25, 1991, Irons notified Auto–Owners of the final judgment and requested payment for the $17,500 judgment and the $34,779.91 that it spent for its own defense. On April 10, 1991, Auto–Owners refused coverage for either the costs of the defense or the final judgment.

Irons then filed this suit for breach of contract and bad faith dealing. It seeks indemnification of the $17,500 judgment and recovery of the attorney fees expended in the Star action as well as those expended in this action. Because Irons claims that Auto–Owners' refusal to defend was done in bad faith, it is also asking for punitive damages.

Auto–Owners argues that its denial of coverage was done in good faith. Furthermore,

**2.** Although Auto–Owners raises the issue of late notice of the lawsuit by Irons, it does not make it a basis for its motion for summary judgment.

it argues that denial was proper because the allegations in Star's complaint did not trigger coverage under either insurance policy. Finally, the judgment that was eventually entered in the Star case is expressly excluded from coverage by the insurance policy because the first instance of copyright infringement occurred before the policy covering such conduct came into effect. Both parties have presented motions for summary judgment.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106

S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Applicable Law

■ When jurisdiction is based on diversity of citizenship, as it is in this case, a federal court must apply the choice of law rules of the state in which it sits. *Klaxon v. Stentor Elec. Mfg., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Mahne v. Ford Motor Co.*, 900 F.2d 83, 85 (6th Cir.), *cert. denied*, 498 U.S. 941, 111 S.Ct. 349, 112

L.Ed.2d 313 (1990). In cases involving the construction of an insurance contract, Michigan law requires the court to apply the law of the state where the insurance policy was issued. *Insurance Co. of North Am. v. Forty–Eight Insulations, Inc.*, 451 F.Supp. 1230, 1237 (E.D.Mich.1978), *aff'd*, 633 F.2d 1212 (6th Cir.1980); *Chrysler Corp. v. Insurance Corp. of North Am.*, 328 F.Supp. 445 (E.D.Mich.1971). In this case, both sides agree that the law of Florida concerning the interpretation of insurance contracts applies because the insurance policies were purchased and issued in that state.

## IV. Analysis

Irons claims that Auto–Owners breached its duties to defend and to indemnify when it refused coverage of Star's lawsuit. Auto–Owners contends, however, that the liability policy excluded coverage and that, therefore, its denial of coverage was proper. In addition, Auto–Owners argues that Irons failed to provide timely notice of Star's complaint. Because the parties have not presented their arguments on the issue of notice, the court will merely decide the duty to defend and the duty to indemnify issues without reference to notice. The court will provide the parties with an opportunity to argue the notice issue at a later date.

### A. Duty to Defend

Under Florida law, the duty to defend "depends solely on the allegations in the complaint filed against the insured." *Tropical Park, Inc. v. United States Fidelity and Guaranty Co.*, 357 So.2d 253, 256 (Fla. Dist.Ct.App.1978). Where "the facts alleged [in the complaint] show any basis for imposing liability upon the insured that falls within the policy coverage, the insurer has a duty to defend." *Lime Tree Village Community Club Ass'n, Inc. v. State Farm General Ins. Co.*, 980 F.2d 1402, 1406 (11th Cir.1993). The issue is whether the complaint alleges facts that fairly or potentially fall under the coverage of the policy. *Tropical Park*, 357 So.2d at 256. Where the complaint alleges facts that are "partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Trizec Properties v. Biltmore Constr. Co.*, 767 F.2d

810, 811–12 (11th Cir.1985) (citing *Tropical Park*, 357 So.2d at 256). The duty to defend exists even if it is later adjudged that there is no coverage under the policy. Any doubt as to whether a duty to defend exists is resolved in favor of the insured and against the insurer. *Id.* at 812.

Irons argues that Star's complaint presented four allegations of copyright infringement. Three of these infringements, the construction of the Arthur home and the two homes on Great Falls Avenue, arguably occurred during the coverage period from August 8, 1988 through August 8, 1989. The other allegation of infringement, the copying of the plans, occurred outside of the coverage period, sometime before July 2, 1988. Since three of the allegations of copyright infringement occurred during the coverage period, Irons claims that the complaint triggered Auto–Owners' duty to defend.

Auto–Owners contends, however, that because the first instance of copyright infringement occurred before the effective date of the policy, coverage is excluded under the provisions of the policy. In particular, Auto–Owners relies on the provision excluding coverage for advertising injury "arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Since it is alleged in Star's complaint that Irons first copied the house plans before August 8, 1988, any later infringement that may have occurred merely arose out of the original infringement.

The court finds, however, that the exclusion provision cited by Auto–Owners does not apply to this case. The exclusion provision refers to the "oral or written publication of material." It mimics the provisions of the policy that relate to advertising injury involving libel, slander, and invasion of privacy. In each case, advertising injury is defined as the "oral or written publication of material" that is slanderous or libelous or invades privacy. The clear implication is that the exclusion provision relied upon by Auto–Owners merely limits the coverage for advertising injury that arises from those three particular torts. There is no exclusionary provision that limits coverage where one of several instances of copyright infringement occurred before the

effective date of the policy. Each instance of copying of plans and each instance where copied plans are used to construct a home constitute an infringement of copyright. *Robert R. Jones Assocs., Inc. v. Nino Homes,* 858 F.2d 274 (6th Cir.1988). Thus, on the face of the complaint, two, and possibly three of the instances of infringement occurred during the coverage period of the advertising injury policy.

■ Under Florida law, the court must construe the policy prepared by Auto–Owners strictly against it and liberally in favor of Irons. *Tropical Park,* 357 So.2d at 256. In addition, "[w]here the terms of an insurance contract are susceptible of two reasonable constructions, that interpretation which will sustain coverage for the insured will be adopted." *Id.* (citing *Poole v. Travelers Ins. Co.,* 130 Fla. 806, 179 So. 138 (1937)). Thus, examining all of the provisions of the policy as a whole, the court finds that the exclusionary provision relied upon by Auto–Owners does not apply in this case. Given the duplicate language of the provision, it is a reasonable construction of the provision that it only applies to libel, slander, and invasion of privacy, not to copyright infringement.

■ Auto–Owners also contends that its refusal to defend was proper under a provision that excludes coverage where the advertising injury arises out of the "willful violation of a penal statute or ordinance committed by or with the consent of the insured." In its complaint, Star alleges that Irons' infringement of its copyright was "willful." Based on that single allegation, Auto–Owners claims that it had no duty to defend. Under copyright law, however, incidental infringement of Star's design by Irons was potentially a basis for recovery. Given that fact, a fair reading of the complaint would have taken the possibility of incidental infringement into account and, therefore, would not have relieved Auto–Owners of its duty to defend. As a result, Auto–Owners was not relieved of its duty to defend based on the mere allegation of willfulness in Star's complaint.

■ The court finds that Auto–Owners had a duty to defend Irons from the complaint filed by Star. Three of the allegations of copyright infringement arguably occurred during the coverage period. The exclusion provisions cited by Auto–Owners do not apply to the facts presented in this case. The court does not decide, however, whether Irons' notice of Star's lawsuit prejudiced the position of Auto–Owners so as to bar coverage. The court will order the parties to present their arguments concerning this issue before it reaches a final determination of the case.

### B. Duty to Indemnify

■ The duty to indemnify depends on the ultimate adjudication of the complaint. The insured has the burden to prove that the claim against it is covered by the insurance policy. *See Gilman v. United States Fidelity and Guaranty Co.,* 517 So.2d 97 (Fla.Dist.Ct. App.1987), *review denied,* 528 So.2d 1181 (Fla.1988). In this case, Irons relies upon the joint judgment entered by the federal court in Florida in establishing its indemnification claim for $17,500. The judgment states that "Irons has infringed [Star's] copyright by making and using copies of [Star's] copyrighted house plan, such infringements having occurred on three separate occasions and each having occurred in the time period beginning in September, 1988 and concluding in January, 1989 and being the result of three houses built by [Irons]." Star was awarded $1,500 in damages for the Arthur home and $8,000 for each of the two houses built on Great Falls Avenue.

### 1. Exclusion because of Prior Publication

Auto–Owners contends that it has no duty to indemnify because Irons' copying of Star's design first occurred before coverage under the policy began. Auto–Owners again relies on the same exclusionary provision involving the oral or written publication of material before a policy's effective date. Based on the same analysis enunciated in the court's discussion of the duty to defend, the court rejects Auto–Owners' contention that the exclusion provision relieves it of its duty to indemnify. Irons has presented unrebutted facts that the construction of the three homes

**1266**

occurred within the effective dates of the 1988–1989 policy. As a result, liability stemming from that construction is covered by the policy.

## 2. Advertising Activity

█ In its motion for summary judgment, Irons has established that the two homes built on Great Falls Avenue were constructed in the course of advertising activity. Auto–Owners has not contested this claim. Irons has not established, however, that the Arthur home was built in the course of advertising activity. Because the policy only applies to liability incurred in the course of advertising an insured's goods or services, the damages stemming from the Arthur home are not recoverable under the policy's indemnification provision.

## 3. Willfulness

█ Auto–Owners also contends that it is relieved of its duty to indemnify based on another exclusionary provision of the policy. It claims that Irons' copyright infringement arose out of a willful violation of a penal statute or ordinance. Because the policy excludes such liability, Auto–Owners argues it has no duty to indemnify damages that resulted from Irons' willful violation of the copyright laws, citing 17 U.S.C. § 506(a) and 18 U.S.C. § 2319 as the applicable penal statutes.

The court finds, however, that there remains a genuine issue of material fact concerning whether Irons' infringement of Star's copyright was a willful violation of a penal statute so as to exclude coverage of the resulting damages under the policy. The stipulated judgment entered in 1991 provides no guidance on the issue. In addition, neither party has demonstrated the absence of a genuine issue of fact concerning whether Irons' conduct was "willful" under the policy's exclusionary provision. As a result, the court finds that "it is for the trier of fact to determine whether the facts of [this] case fall within the scope of coverage." *Marr Inv., Inc. v. Greco*, 621 So.2d 447, 448 (Fla.Dist.Ct. App.1993).

As discussed earlier, the court does not decide whether Irons' late notice relieved Auto–Owners of its duty to indemnify. The court will provide the parties with a final opportunity to resolve this issue.

## C. Conclusion

The court finds that Auto–Owners had a duty to defend Irons in the lawsuit brought by Star. It was clear from the allegations presented in Star's complaint that two or more of the alleged acts of copyright infringement occurred while the policy was in effect. In addition, none of the exclusionary provisions of the policy applied to the allegations in Star's complaint.

The court also finds that Auto–Owners may have had a duty to indemnify Irons for $16,000 of the $17,500 judgment entered against it. It is clear that construction of the two homes on Great Falls Avenue occurred during the applicable policy period and in the course of advertising activity, thereby resulting in $16,000 in damages. Construction of the Arthur home, however, did not constitute advertising conduct and, therefore, the $1,500 in damages resulting from its construction is not covered by the policy. The court also finds that a genuine issue of fact remains to be decided as to whether Irons' infringement of Star's copyright was a willful violation of a penal statute so as to relieve Auto–Owners of its duty to indemnify.

Finally, the court finds no merit in Irons' contention that Auto–Owners' denial of coverage was done in bad faith. As demonstrated by the court's discussion of the various issues presented by this case, Auto–Owners acted in good faith when it refused to defend or indemnify Irons. Although possibly mistaken, Auto–Owners has presented a rational and good faith interpretation of the exclusionary provisions of its policy. Irons has made no showing that Auto–Owners decision not to defend or indemnify was based on anything other than mistaken judgment and not bad faith.

## V. Notice and Attorney Fees

Although the court finds that Auto–Owners had a duty to defend Irons, and that it may have had a duty to indemnify it as well, the court has not decided whether Auto–Owners was relieved of those duties because

of the alleged failure of Irons to provide timely notice of Star's complaint. Because neither party presented arguments on the question of notice, the court will order the parties to submit briefs on the issue. In addition, the parties shall address whether Auto–Owners is responsible for Irons' costs and attorney fees expended in this action should Auto–Owners ultimately be found to have breached the insurance contract. Auto–Owners shall submit a single brief on these questions within thirty days of the date of this order. Irons' response and defendant's reply shall be submitted according to the local rules of the Eastern District of Michigan.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment is **DENIED** in part and **GRANTED** in part.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED.**

**IT IS FURTHER ORDERED** that within thirty days of the date of this order, defendant shall submit a brief on the issues of notice and attorney fees. The parties shall submit a response and a reply according to the local rules of the court.

**SO ORDERED.**