**APPLIED BOLTING TECHNOLOGY PRODUCTS, INC., Plaintiff**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant.**

Civil Action No. 96–5126.

United States District Court, E.D. Pennsylvania.

Oct. 21, 1996.

Arnold I. Kalman, Philadelphia, PA, for Plaintiff.

Thomas J. Duffy, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

VanARTSDALEN, Senior District Judge.

Applied Bolting Technology Products, Inc., (Applied) moves for summary judgment in this declaratory judgment action against its insurer, United States Fidelity & Guaranty Company (USF & G). Applied contends that the terms of its Commercial General Liability (CGL) policy obligate USF & G to defend an underlying lawsuit. USF & G cross-moves for summary judgment, claiming that it has neither a duty to defend nor a duty to indemnify. After carefully considering the parties' briefs and oral arguments on these issues, I will deny Applied's motion and grant USF & G's cross-motion for summary judgment.

## I. Facts

The following facts are not in dispute. Applied is a Vermont corporation which manufactures direct tension indicators, or DTIs. DTIs are round washers with bumps or protrusions spaced around the washer surface. DTIs are used with high-strength bolts and nuts to fasten structural steel on buildings, bridges, over-head highway signs, and other industrial structures. When DTIs are used as part of a bolt assembly, the protrusions on the washer flatten as the bolt is tightened and the clamping pressure is increased. By inserting a feeler gauge into the bolt assembly, a construction worker can measure the extent to which the protrusions have flattened and determine from the extent of flattening whether the bolt has been properly tightened.

USF & G sold to Applied a standard CGL policy (the policy). The policy's coverage became effective on January 18, 1995, and expired on January 18, 1996. Under the policy, USF & G agreed to defend and indemnify Applied in any suit seeking damages for, *inter alia*, "advertising injury," which is defined in the policy to mean

injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

Expressly excluded from the policy coverage is an " 'advertising injury' ... [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

Applied contends that it is has been sued for an "advertising injury," that USF & G has a duty to defend the underlying suit, and that the "first-publication exclusion" does not bar coverage.

The underlying suit was filed by J.M. Turner, Inc., (Turner) on April 13, 1995; it is currently pending before this court. *See J.M. Turner, Inc. v. Applied Bolting Technology Prod., Inc., et al.,* Civ. No. 95–2179 (E.D.Pa.1995). Turner names Applied and two of its corporate officers as defendants and alleges three counts: (1) breach of contract, (2) fraud, and (3) false advertising and unfair competition. According to Applied, Count III seeks damages for an "advertising injury." [1]

In Count III, Turner alleges that Applied engages in false advertising and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Turner, which also manufactures DTIs, claims that Applied's DTIs do not satisfy the requirements set by the industry for manufacturing and testing DTIs. The latest industry standard, which the American Society for Testing Materials (ASTM) promulgated on December 1, 1994, is known as "ASTM F959–94a."

---

**1.** Applied does not contend that a duty to defend arises under Counts I and II of Turner's complaint.

This standard requires that all DTIs meet certain chemical, mechanical, and dimensional requirements before they are sold by the manufacturer.

Turner alleges that Applied falsely advertises the claim "all DTIs made to ASTM F959–94a," and that this advertisement influences purchasing decisions and causes Turner to lose sales to Applied. Turner claims that purchasers are influenced when a manufacturer advertises that its DTIs meet the requirements of ASTM F959–94a. Turner also claims that construction projects often require the use of DTIs that have been tested under ASTM F959–94a. Turner alleges that Applied's false advertising began on or about December 1, 1994, when ASTM F959–94a was promulgated, and that Applied's false advertising may have begun earlier, as Applied previously advertised that its DTIs satisfied the pre-December 1, 1994, ASTM standard.

## II. Discussion

This court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is a genuine issue if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The parties agree and it is clear from the pleadings that the law of Vermont governs this dispute.

 Under Vermont law, the duty to defend is broader than the duty to indemnify. *Select Design, Ltd. v. Union Mut. Fire. Ins. Co.,* —— Vt. ——, 674 A.2d 798, 800 (1996). A duty to defend issue is decided by comparing the allegations of the underlying com-

plaint to the terms of the policy. *Id.* There is a duty to defend if the policy "potentially" covers any of the underlying claims. *Id., see also Garneau v. Curtis & Bedell, Inc.,* 158 Vt. 363, 610 A.2d 132, 134 (1992) ("The insurer has a duty to defend whenever it is clear that the claim against the insured might be of the type covered by the policy."). There is no duty to defend if there is "no possibility" that the insurer might be obligated to indemnify. *City of Burlington v. National Union Fire Ins. Co.,* 163 Vt. 124, 655 A.2d 719, 721 (1994); *see also Woodstock Resort Corp. v. Scottsdale Ins. Co.,* 927 F.Supp. 149, 153 (D. Vt.1996) ("Only if there is no possible factual or legal basis on which the insurer might be obligated to indemnify will there be no duty to defend.").

 An insurance policy must be interpreted according to its terms and the evident intent of the parties as expressed in those terms. *Select Design,* 674 A.2d at 800. Any disputed term must be afforded its plain, ordinary, and popular meaning, and any ambiguity in the policy must be resolved in favor of the insured. *Woodstock Resort,* 927 F.Supp. at 153 (citing *American Protection Ins. Co. v. McMahan,* 151 Vt. 520, 562 A.2d 462 (1989)).

### a. Advertising Injury

Applied contends there is a duty to defend because Count III of Turner's complaint alleges an "advertising injury," as the policy defines that term. Specifically, Applied believes that Count III seeks damages for "misappropriation of advertising ideas or style of doing business" and "infringement of ... slogan." [2] USF & G counters that, based on the plain meaning of the policy's terms and the way in which the courts have interpreted those terms, there is no duty to indemnify.

### (1) "Misappropriation of advertising ideas or style of doing business"

 I agree with USF & G that Count III of Turner's complaint does not seek damages for "misappropriation of advertising ideas or

---

**2.** Applied does not contend that Count III satisfies either subpart (a) or (b) of the definition of

"advertising injury." See the definition of "advertising injury" in the text, *supra.*

style of doing business." The policy's terms are dispositive. Although the phrase "misappropriation of advertising ideas or style of doing business" is not defined in the policy, the plain meaning of that phrase eliminates any possibility that there is coverage.

Applied argues that the phrase "misappropriation of advertising ideas or style of doing business" should be parsed, term by term, and that each term should be defined without any reference to the other terms in the sentence or to the context in which each term is used. For example, Applied contends that the underlying suit alleges "misappropriation of advertising ideas or style of doing business" because "Turner alleges that Applied's misuse of 'made to ASTM F959' in advertising amounted to 'passing-off' its DTIs as conforming to ASTM F959." Applied's Motion for Summary Judgment, p. 25. Stated another way, Applied is claiming that there is coverage because it has allegedly "misappropriated" (*i.e.*, misused) an "idea" (*i.e.*, ASTM F959–94a) when "advertising" its DTIs (*i.e.*, when distributing sales materials to the public with the representation "all DTIs made to ASTM F959–94a"). Applied's interpretation of the policy, however, ignores the plain meaning of the policy's terms.[3]

■ Accepting, for the sake of argument, Applied's contention that "misuse" is an appropriate synonym for the policy's term "misappropriation,"[4] I do not agree that Applied has misused an "advertising idea." While it may be true that Applied "advertises" to potential buyers an "idea" when it uses "all DTIs made to ASTM F959–94a,"[5] the policy covers an underlying suit only when Applied is alleged to have misused an "advertising idea." "Advertising" is not a noun in the phrase "misappropriation of advertising ideas;" it is an adjective, and it is employed in the sentence to describe the kind of "idea" that must be misappropriated or misused in order for there to be coverage. Accordingly, Applied's attempt to define "advertising" as a noun must be rejected.[6] An insurance policy "must be interpreted according to its terms and the evident intent of the parties as expressed in those terms." *Select Design*, 674 A.2d at 800. Moreover, a court must "construe the insurance policy as it is written, not rewrite it on behalf of the parties." *City of Burlington v. Associated Elec. & Gas Ins. Serv.*, —— Vt. ——, 669 A.2d 1181, 1183 (1995).

Reading the policy's words as they are written, ASTM F959–94a cannot be considered an "advertising idea." The policy is worded to cover "misappropriation of advertising ideas;" it is not worded, as Applied reads it, to cover "misuse in advertising of any idea regardless of the nature of that idea." Turner does not allege that ASTM F959–94a is or ever was an "idea" for "advertising" DTIs; rather, Turner alleges that ASTM F959–94a is a testing standard that enables a manufacturer to determine whether its DTIs are fit for sale in the marketplace. While it may be that in the DTI industry the mere mention of ASTM F959–94a is an effective advertising tool, nothing in

---

3. There are currently no Vermont Supreme Court or lower court opinions interpreting the meaning of "misappropriation of advertising ideas or style of doing business." Applied relies in its brief on *Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group*, 44 Cal.App.4th 531, 52 Cal.Rptr.2d 26, 32–34 (1996), for the proposition that the terms "misappropriation," "advertising ideas," and "style of doing business" are each susceptible to two or more reasonable interpretations or are, in other words, ambiguous. For the reasons that follow in the text of this opinion, I find that these terms are not ambiguous, and thus, in my view, *Lebas* was wrongly decided. Notably, the *Lebas* opinion was withdrawn after the California Court of Appeal granted rehearing in the case. *See Lebas*, 1996 WL 252864 (Cal.Ct.App.2d Dist. May 13, 1996).

4. "Steal" would seem to be a more fitting synonym in this context, particularly in light of the factual scenarios that are normally presented in the underlying complaints that give rise to insurance disputes over the meaning of "misappropriation of advertising ideas." *See, e.g., Sentex Sys., Inc. v. Hartford Acc. & Indem. Co.*, 93 F.3d 578, 580 (9th Cir.1996).

5. The parties do not dispute that Applied "advertises" its claim "all DTIs made to ASTM F959–94a."

6. Applied disregards the maxim *noscitur a sociis*, which holds that "a word is known by the company it keeps." *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, —— U.S. ——, ——, 115 S.Ct. 2407, 2411, 132 L.Ed.2d 597 (1995).

the record would support a finding that Applied reasonably expected when it purchased the policy that ASTM F959–94a would fit within the plain meaning of the policy term "advertising ideas." Thus, I am satisfied that ASTM F959–94a is not an "advertising idea."

In addition to there being no coverage under the plain meaning of the policy's terms, the courts that have considered the meaning of "misappropriation of advertising ideas" have defined it as "the wrongful taking of the manner by which another advertises its goods or services." *Union Ins. Co. v. The Knife Co.*, 897 F.Supp. 1213, 1216 (W.D.Ark.1995) (citing *J.A. Brundage Plumbing v. Massachusetts Bay Ins.*, 818 F.Supp. 553, 557 (W.D.N.Y.1993), *vacated following settlement*, 153 F.R.D. 36, 38 (W.D.N.Y.1994)); *Fluoroware, Inc. v. Chubb Group of Ins. Companies*, 545 N.W.2d 678, 682 (Minn.App.Ct.1996) ("the wrongful taking of another's manner of advertising.") (citations omitted). In Count III, Turner does not allege that Applied has wrongfully taken or misused the manner by which Turner or any other company advertises DTIs; rather, Turner alleges that Applied falsely advertises compliance with an industry testing standard, thereby causing Turner to lose sales to Applied. Turner intends to present evidence that Applied's DTIs do not comply with ASTM F959–94a. Turner does not intend to argue that Applied has wrongfully taken from Turner the idea to advertise the claim "all DTIs made to ASTM F959–94a."

 Applied's alleged misuse of ASTM F959–94a also fails to qualify as a "misappropriation of . . . style of doing business." The phrase "style of doing business" refers to a company's "comprehensive manner of operating its business." *Poof Toy Products, Inc. v. United States Fidelity & Guar. Co.*, 891 F.Supp. 1228, 1232 (E.D.Mich.1995) (quoting *Saint Paul Fire & Marine Ins. Co. v. Advanced Int'l Sys., Inc.*, 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd*, 21 F.3d 424 (4th Cir. 1994) (Table)); *Fluoroware*, 545 N.W.2d at 682; *Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.*, 191 Wis.2d 229, 528 N.W.2d 486, 490 (Ct.App.1995). For there to be coverage, the underlying complaint must allege

that Applied has in essence usurped Turner's "trade dress" or overall manner of conducting its DTI manufacturing business. *See Saint Paul Fire*, 824 F.Supp. at 585. I find that Applied's alleged misuse of ASTM F959–94a does not arguably amount to an allegation that Applied has wrongfully taken or misused Turner's "style of doing business."

For these reasons, USF & G is not required to defend or indemnify Applied, as the underlying suit does not potentially fall within coverage for "misappropriation of advertising ideas or style of doing business."

### (2) "Infringement of . . . slogan"

 Applied contends that Count III of Turner's complaint alleges an "advertising injury" because the phrase "infringement of . . . slogan" may be interpreted to mean "the non-fulfillment or the neglect to fulfill a representation made or position taken in advertising." Applied's Motion for Summary Judgment, p. 27. In other words, Applied maintains that, because it allegedly fails to fulfill its representation that its DTIs are made to ASTM F959–94a, the underlying claim is covered as an "infringement of . . . slogan." USF & G counters that the underlying complaint does not allege that Applied has infringed, or taken, Turner's "slogan," as Turner does not allege that it owns the phrase "all DTIs made to ASTM F959–94a" or that it uses that phrase when advertising.

The policy covers " 'advertising injury' . . . arising out of . . . infringement of copyright, title, or slogan." A plain reading of this provision suggests that there is coverage only if Applied is alleged to have infringed Turner's ownership interest in or exclusive right to use a copyright, title, or slogan. Significantly, Applied has not cited any case, and I am unaware of any, in which a court has interpreted "infringement of . . . slogan" to cover an underlying claim that does not involve an alleged infringement of an ownership interest in or exclusive right to use a slogan. Here, Turner alleges in the underlying suit that Applied falsely advertises that its DTIs conform to ASTM F959–94a. It is undisputed that Turner does not allege that it has an ownership interest in or an exclu-

sive right to use "all DTIs made to ASTM F959–94a." Thus, assuming ASTM F959–94a is a "slogan" within the meaning of the policy, I am satisfied that the language "infringement of . . . slogan" does not arguably require USF & G to defend or indemnify Applied.

As a final matter, Applied makes a more general argument that "advertising injury" should be defined in accordance with a statement made by the Vermont Supreme Court in *Select Design*, 674 A.2d 798. *See* Applied's Reply Memorandum, p. 2. In *Select Design*, the court considered the meaning of the term "advertising" in a CGL policy that was identical to the policy at issue here. The issue presented in *Select Design* was whether the plaintiff had been "advertising" within the meaning of the provision that covers an underlying suit only if the injury occurs "in the course of advertising [the insured's] goods." 674 A.2d at 800 (emphasis added). The plaintiff argued that "advertising," as used in the above phrase, should be defined to include the solicitation of a competitor's known customers. The Vermont Supreme Court disagreed, choosing instead to define the term as "the widespread distribution of promotional material to the public at large." *Id.*, at 801 (citations omitted). In rejecting the plaintiff's definition, the court made the following observation:

> We find little congruity between the definition of 'advertising' offered by plaintiffs and the definition of 'advertising injury' set out in the policy before us. The term 'advertising injury,' as defined in the offenses set out in the policy, and as construed in an overwhelming majority of reported cases, is injury to another that results from the content of statements about the products or services of the insured.

674 A.2d at 802. Based on this passage, Applied argues that "advertising injury" should be defined as "injury to another that results from the content of statements about the products or services of the insured."

I will reject Applied's argument, primarily because the above-quoted sentence regarding the "meaning" of "advertising injury" is dictum: the meaning of "advertising injury" was not at issue in *Select Design*, and the court made the statement merely to emphasize that the plaintiff's definition of "advertising" in the phrase "in the course of advertising [the insured's] goods" was incorrect. Moreover, it is apparent the *Select Design* court did not intend to make the above statement to define "advertising injury" because "advertising injury" simply did not need to be defined. Like the present case, "advertising injury" in *Select Design* was defined in the policy by the four-subpart list of offenses. Only the four offenses, not the term "advertising injury" itself, would need to be interpreted or defined. Indeed, the reason why "advertising injury" always appears in the policy surrounded by quotation marks is to remind the reader to use only the four-subpart list of offenses to define that term. As such, Applied may not rely on the above-quoted passage from *Select Design* to define "advertising injury."

In summary, there is no possibility that USF & G has a duty to defend or indemnify under the policy, as the Count III of the underlying complaint does not allege an "advertising injury."

### b. First-publication exclusion

■ Assuming *arguendo* that Turner's Count III does potentially fall within the policy definition of "advertising injury," I find that USF & G is under no duty to defend or indemnify in light of the policy's "first-publication exclusion." Expressly excluded from coverage is an " 'advertising injury' . . . [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." USF & G argues that coverage is excluded because Applied's injurious advertisement was first published before coverage began. I agree.[7] Under the plain terms of the exclusion, USF & G need not defend or

7. USF & G also relies on another exclusion, which bars coverage for an " 'advertising injury' arising out of . . . [t]he failure of goods, products or services to conform with advertised quality or performance." I do not reach the issue of whether that exclusion applies, as this matter can be fully resolved (in USF & G's favor) on other grounds.

indemnify because the policy's coverage began on January 18, 1995, and Applied first published the claim "all DTIs made to ASTM F959–94a" sometime before January 18, 1995.[8]

Applied contends that the first-publication exclusion does not control because Turner's complaint alleges a "continuous tort": namely, that there is coverage because, although Turner may have first suffered advertising injury prior to January 18, 1995, Turner also suffered advertising injury while the policy's coverage was in effect. This argument is without merit. Under the exclusion's plain terms, the "first publication" date is a landmark: if the injurious advertisement was "first published" before the policy coverage began, then coverage for the "advertising injury" is excluded. *See Advance Watch Co. v. Kemper Nat'l Ins. Co.,* 878 F.Supp. 1034, 1042–43 (E.D.Mich.1995); *P.J. Noyes Co. v. American Motorists Ins. Co.,* 855 F.Supp. 492, 495 (D.N.H.1994); *John Deere Ins. Co. v. Shamrock Indus.,* 696 F.Supp. 434, 440–41 (D.Minn.1988), *aff'd,* 929 F.2d 413 (8th Cir. 1991). It is irrelevant that later publications, made after the policy became effective, also caused "advertising injury" or increased the damages.

The exact date on which Applied first published "all DTIs made to ASTM F959–94a" is not established in the record. Nevertheless, Applied does not dispute that the first publication was made prior to January 18, 1995, and any publication of "all DTIs made to ASTM F959–94a" that was made prior to January 18, 1995, caused injury of the type Turner claims to have suffered (*i.e.,* lost sales to Applied). *See Dogloo, Inc. v. Northern Ins. Co. of N.Y.,* 907 F.Supp. 1383, 1391 (C.D.Cal.1995) ("[B]ased on the record before it, the Court cannot say that any advertising published prior to the policy period caused the type of injury alleged in [the underlying complaint]."); *Hartford Accident & Indem. Co. v. Sherwood Brands, Inc.,* 111 Md.App. 94, 680 A.2d 554, 561 (1996) (same analysis). Therefore, even though Turner alleges that "advertising injury" occurred due to publica-

tion of "made to ASTM F959–94a" during the policy period, summary judgment in favor of USF & G is appropriate because the insurer has established conclusively that the "first" injurious publication predated policy coverage. *See John Deere,* 696 F.Supp. at 440–41. The exclusion cannot be read, as Applied urges, to bar coverage only if all of the injurious publications alleged in the underlying complaint occurred outside of the coverage period. Such a reading ignores the plain meaning of the exclusion's unambiguous terms. *See Advance Watch,* 878 F.Supp. at 1043 (rejecting the "continuous tort" argument as meritless in light of clear terms of the first-publication exclusion).

Applied contends that it seeks coverage from USF & G for advertising injury that Turner suffered during the policy coverage period only, and thus, Applied argues, the first-publication exclusion, which pertains to events that occurred prior to policy coverage, has no bearing on whether the underlying suit is covered. Applied supports this argument by claiming that Turner suffers a "different" injury each time Applied publishes "made to ASTM F959–94a" because Turner allegedly loses sales to different customers each time Applied publishes the offending advertisement. Applied thus argues that, because Turner's injuries during the policy coverage period are distinct from those that arose prior to the coverage period, any publication Applied made prior to coverage should simply be disregarded.

Once again, Applied ignores the plain language of the policy. The policy excludes coverage if the "first publication" of the offending advertisement was made before the coverage period began. Thus, the only dispositive issue under this exclusion is whether the injurious advertisement was "first published" prior to coverage. It is irrelevant that the injurious publication caused a variety of different injuries before and during the coverage period. Applied does not dispute that the only injurious advertisement challenged in the underlying suit is the claim "all DTIs made to ASTM F959–94a." Ap-

---

8. Applied has conceded in its brief and at oral argument that it first published "all DTIs made to ASTM F959–94a" prior to January 18, 1995.

plied also concedes that the first time this advertisement was published was before coverage began. Based on these facts, the exclusion bars coverage. Whether Turner suffers a different type of injury following each publication of Applied's advertisement is irrelevant under the plain terms of the exclusion, and Applied cannot seek coverage for injuries Turner suffered during the policy period when it concedes that the offending advertisement was "first published" prior to the date coverage began.

 In addition to its "continuous tort" arguments, Applied argues that there is coverage because the first-publication exclusion applies only to an "advertising injury" arising out of libel, slander and invasion of privacy torts, and does not apply to an "advertising injury" arising out of "misappropriation of advertising ideas or style of doing business" and "infringement of ... slogan." To support this argument, Applied relies on *Irons Home Builders, Inc. v. Auto–Owners Ins. Co.*, 839 F.Supp. 1260 (E.D.Mich.1993). In *Irons Home,* the district court ruled that the first-publication exclusion applies to "advertising injury" as defined by the offenses listed in subparts (a) and (b) of the policy definition, but does not apply to the offenses listed in subparts (c) and (d) of that definition.[9] The court reached this conclusion by reasoning that

> [t]he exclusion provision refers to the 'oral or written publication of material.' It mimics the provisions of the policy that relate to advertising injury involving libel, slander, and invasion of privacy. In each case, advertising injury is defined as the 'oral or written publication of material' that is slanderous or libelous or invades privacy. The clear implication is that the exclusion provision relied upon by [the insurer] merely limits the coverage for advertising injury that arises from those three particular torts.

839 F.Supp. at 1264.

I disagree with the *Irons Home* interpretation of the policy. In my view, the first-publication exclusion must be read to apply to the entire definition of "advertising inju-

ry," which includes the offenses of "misappropriation of advertising ideas or style of doing business" and "infringement of copyright, title, or slogan." In the policy, the term "advertising injury" is always surrounded by quotation marks, and it appears with quotation marks in the first-publication exclusion. "Advertising injury" is defined by the four, not two, offenses expressly set forth in the policy to define "advertising injury." The first-publication exclusion bars coverage for " 'advertising injury' ... [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." I read this exclusion to mean that "advertising injury," which I must assume the insurance company intentionally surrounded with quotation marks when it used that term in the exclusion, has the same four-subpart meaning when used in the exclusion that it has every other time it appears in the policy surrounded by quotation marks.

The exclusion must be read to give effect to the plain meaning of "advertising injury." When that is done, it is certainly irrelevant that some of the language in the exclusion happens to match some of the words in subparts (a) and (b) of the definition of "advertising injury" but not match some of the language in subparts (c) and (d). Accordingly, I find that the first-publication exclusion applies to all of the offenses listed in the four-subpart definition of "advertising injury," which would include any "advertising injury" alleged by Turner.

Finally, it seems evident that the first-publication exclusion was inserted in the policy to avoid precisely the situation presented in this case. In December, 1994, Applied began advertising that its DTIs satisfied ASTM F959–94a. Thereafter, on January 18, 1995, Applied obtained a CGL policy providing coverage for "advertising injury," and then continued its advertising campaign by republishing its claim "all DTIs made to ASTM F959–94a." Obviously, USF & G never intended to provide coverage for such republications during the policy period.

In summary, pursuant to the first-publication exclusion, USF & G is not required to

---

9. See the definition of "advertising injury" in the text, *supra.*

**1038**

defend or indemnify the underlying allegation of "advertising injury" (assuming *arguendo* there is an underlying allegation of "advertising injury").

### III. Conclusion

USF & G's cross-motion for summary judgment will be granted, as the underlying complaint does not arguably allege an "advertising injury." If there is an "advertising injury," the policy's first-publication exclusion bars coverage. Applied's motion for summary judgment will be denied, and judgment will be entered in favor of USF & G.

An appropriate order follows.

### ORDER

For the reasons set forth in the accompanying memorandum, it is ORDERED that Plaintiff's "Motion for Summary Judgment on Issues of Liability" (Docket Entry # 7) is DENIED, and Defendant's Cross–Motion for Summary Judgment (Docket Entry # 9) is GRANTED. Accordingly, it is FURTHER ORDERED that JUDGMENT is entered in favor of the Defendant, United States Fidelity & Guaranty Company, and against the Plaintiff, Applied Bolting Technology Products, Inc.