Walter L. MADDOX, III, Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSUR-ANCE COMPANY and United States Fidelity and Guaranty Company, Defendants.

Civ.A.No. 01CV1264.

United States District Court,
W.D. Pennsylvania.

Dec. 27, 2001.

Leland P. Schermer, Metz, Schermer & Lewis, Pittsburgh, PA, for Plaintiff.

Lynette Norton, Alan S. Miller, Jennifer L. Poller, Picadio, McCall, Kane & Norton, Pittsburgh, PA, for Defendants.

### MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, Chief Judge.

Currently before me is plaintiff's motion for a temporary restraining order pending a preliminary injunction and to schedule a preliminary injunction hearing, defendant's motion for partial summary judgment, and plaintiff's motion for partial summary judgment. Dkt. nos. 4, 14, 16. For the

reasons discussed below, I will grant plaintiff's motion for partial summary judgment only as to defendant USF & G, deny defendant's motion for partial summary judgment and deny plaintiff's motion for temporary restraining order without prejudice.

## I.

Plaintiff, Walter L. Maddox, III, is a musician who performs in a group named "The Marcels." In order to protect his professional livelihood, plaintiff purchased a one-year commercial general liability policy from United States Fidelity and Guaranty Company ("USF & G") for each year between 1992 and the present. Dkt. no. 18. The policies from 1998 through 2002 may have been issued by both USF & G and St. Paul Fire and Marine Insurance Company ("St.Paul"), since St. Paul's name is at the top of many of the policy pages and the instructions read that any questions about revisions should be directed to "your St. Paul representative." Dkt. no. 16, Ex. 8–11.

All of the policies contained coverage for "[a]dvertising injur[ies] caused by an offense committed in the course of advertising [plaintiff's] goods, products or services." Dkt. no. 1, Ex. 1, at 3. The policies define advertising injury as "an injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan."

*Id.* at 7–8. The policies also contain a "first publication" policy exclusion which reads: "[t]his insurance does not apply to 'personal injury' or 'advertising injury' . . . arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." *Id.*

In 2001, Sunny James Cvetnic filed a complaint in this court against Maddox and the four other individuals currently in his musical group (hereinafter the "Marcels defendants"). Dkt. no. 1, Ex. 2; *Cvetnic v. Maddox*, Civ. No. 01–82. That underlying action was the catalyst for the instant matter. Cvetnic stated in his complaint that he obtained a trademark registration number for the Marcels mark on June 25, 1996, and that he never consented to the Marcels defendants' use of this trademark. *Id.*, ¶¶ 5, 7. Therefore, Cvetnic asserted claims for (1) violation of the Lanham Act, protecting trademarked material; (2) violation of the Pennsylvania Trademark Act; (3) violations of Pennsylvania's Unfair Trade Practices and Consumer Law and (4) unfair competition. *Id.* Although Cvetnic noted in his complaint that the Marcels trademark was first used on February 9, 1961, he did not state the date of the first infringement. *Id.*, ¶ 5. He merely stated that "[s]ubsequent to Plaintiff Sunny James Cvetnick's registration and use of the trademark The Marcels, Defendants have knowingly promoted, booked and advertised their own musical group under the Plaintiffs registered trademark, The Marcels." *Id.*, ¶ 8.

Defendants USF & G/St. Paul initially determined that the *Cvetnic* complaint alleged an advertising injury, and USF & G agreed to defend Maddox in the underlying action subject to a reservation of rights, which stated in relevant part that "[i]f it is determined that such infringement [alleged by Cvetnic] first took place

prior to the inception of coverage, coverage will be precluded for this claim." Dkt. no. 4, Ex. 10. Subsequently, on June 20, 2001, USF & G/St. Paul told Maddox they were no longer obligated to provide Maddox with a defense in the *Cvetnic* action, based on information he provided to them showing that he performed as part of the Marcels in 1961. Dkt. no. 4, Ex. 13. Based on this information, defendants concluded that the Cvetnic lawsuit fell under the "first publication" policy exclusion.

Plaintiff instituted the current action against USF & G and St. Paul requesting, *inter alia,* a declaratory judgment on the insurers' duty to defend him in the *Cvetnic* action. Plaintiff then filed a motion for temporary restraining order enjoining defendants from withdrawing their previous agreement to provide Maddox with a defense and ordering Defendants to pay all of Maddox's counsel fees and expenses incurred by his present counsel. Dkt. no. 4. On August 8, 2001, I severed the declaratory judgment count from the from all the remaining counts, and stayed discovery. Dkt. no. 12. Both parties subsequently filed cross-motions for partial summary judgment on the declaratory judgment count. Dkt. nos. 14, 16.

## II.

■ Under Pennsylvania law, an insurer has a duty to defend its insured "whenever the allegations of the complaint filed against the insured comprehend an injury that is actually or *potentially* within the scope of the insurance policy." *Sorbee Intl. Ltd. v. Chubb Custom Ins. Co.,* 735 A.2d 712, 714 (Pa.Super.1999) (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.,*

410 Pa. 55, 188 A.2d 320 (1963)) (emphasis added). Additionally, "if a single claim in a multi-claim law suit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on [any] covered claim." *Frog, Switch & Manufacturing Co., Inc. v. The Travelers Ins. Co.,* 193 F.3d 742, 746 (3d Cir.1999). The insurer has the burden of showing that a policy exclusion precludes coverage, and if this burden is not met the insurer has a continuing duty to defend. *See, e.g., American States Ins. v. Maryland Cas. Co.,* 427 Pa.Super. 170, 628 A.2d 880, 887 (1993). Here, the defendants do not dispute that the *Cvetnic* action alleges "advertising injuries" which could be covered by the policies.[1] However, defendants claim that they do not need to provide a defense because they have information showing that the "first publication" policy exclusion applies to all the alleged advertising injuries.

■ Before I can determine duty to defend, by applying the language of the policy to the relevant facts, I must first attempt to determine the meaning of the prior publication exclusion. *See Lucker Mfg. v. Home Ins. Co.,* 23 F.3d 808, 813–14 (3d Cir.1994) (citing *Erie Ins. Exch. v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363, 1368 (1987)). Unambiguous language in an insurance policy must be given its plain meaning while ambiguous terms must be construed against the insurer. *See, e.g., Madison Construction Co. v. Harleysville Mutual Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999); *St. Paul Fire & Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.1991). A policy term is am-

---

1. Defendants appear to concede that based solely on the information contained within the *Cvetnic* complaint, USF & G has a duty to defend because the facts alleged therein do not prove that the prior publication exclusion applies. Although the complaint alleges that the Marcels name was first used in 1961, it does not state that Maddox—the policy holder—used the name prior to the beginning of the policy period.

biguous as a matter of law if it is reasonably susceptible to more than one interpretation. *See, e.g., Madison,* 735 A.2d at 106; *Lucker,* 23 F.3d at 814. Courts should interpret the policy language "by what [a] reasonable person in the position of the insured would have understood the words to mean." *Lucker,* 23 F.3d at 815.

The first publication exception states: "[t]his insurance does not apply to 'personal injury' or 'advertising injury' . . . arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." *Id.* Defendants argue the plain meaning of this language is that any advertising injury caused by publication of material that has been published by the insured prior to the beginning of the policy period is not covered, even if the prior publication did not cause an injury. Defendants suggest that this is the only reasonable interpretation of the language, since there is no modifier such as "wrongful" in the phrase "first publication."

Despite defendants claims of clarity, the language of this first publication exclusion is ambiguous because it is reasonably susceptible to more than one interpretation. The alternative reasonable interpretation—requiring the prior publication to cause the same injury as the later publication—is suggested both by the context of the language and the way others have interpreted it. First, read in context, the phrase "whose first publication" could be understood to refer not only to the word "material" but also the injurious nature of that material. Second, a reasonable person in the position of the insured would understand the exception to mean that an advertising injury is only excluded when there was a wrongful publication prior to the policy period, because logically the point of the exclusion is to prevent an individual who has caused an injury from

buying insurance so that he can continue his injurious behavior. *Cf. Applied Bolting Tech. Prods., Inc. v. U.S. Fidelity & Guaranty Co.,* 942 F.Supp. 1029, 1037 (E.D.Pa.1996) (suggesting that the first publication exclusion was intended to prevent this situation). Third, since courts interpreting the prior publication exception have assumed the prior publication must cause the same sort of injuries as the latter publication, an insured could reasonably believe that this interpretation was correct. *See Bay Electric Supply Inc. v. Travelers Lloyds Ins. Co.,* 61 F.Supp.2d 611, 619–20 (S.D.Tex.1999) (holding that the prior publication exclusion did not apply even though one of the plaintiffs sold circuit breakers prior to policy period because the circuit breakers trademark was not registered until after the policy period and the prior sale was not actionable/infringing); *Dogloo Inc. v. Northern Ins. Co. of N.Y.,* 907 F.Supp. 1383, 1391 (C.D.Ca. 1995) (suggesting prior publication exclusion not triggered without evidence that the prior publication was injurious); *PJ Noyes v. American Motorists Ins. Co.,* 855 F.Supp. 492, 497 (D.N.H.1994) (prior publication exclusion does not apply based on non-infringing publications of trademark prior to policy period). Finally, the reasonableness of the alternative interpretation is vividly illustrated by USF & G's explanation of its reservation of rights, which appears to support plaintiff's construction of the exclusion. Dkt. no. 4, Ex. 10. In this document, USF & G stated that the prior publication exclusion would apply if there was an "infringement" prior to the policy period. *Id.*

■ Because the first publication exclusion can be reasonably susceptible to multiple interpretations, the language is ambiguous. *See, e.g., Madison,* 735 A.2d at 106. I must construe all ambiguities in favor of the insured, *see id.,* and so I hold

that the first publication exclusion applies only when publications prior to the policy period cause injuries identical to the latter publication.[2]

Based on this construction of the prior publication exclusion, defendants have not offered any evidence showing that the exclusion applies. Application of the exclusion can not be based on the *Cvetnic* complaint because it contains only allegations of infringement after the beginning of the policy period. Dkt. no. 1, Ex. 2, at 8. Defendants argued that they were entitled to cancel the policy when they found out that Maddox performed under the name "Marcels" prior to the beginning of the policy period, but even if I were permitted to consider this fact, it does not show that plaintiff was responsible for any *infringing* publication of the "Marcels" trademark prior to the policy period.[3] Because the

---

**2.** Plaintiff also made the argument that the prior publication exception does not apply to trademark violations, but only to libel, slander or invasion of privacy injuries. Courts are split on whether the prior publication exception language is ambiguous in its application to non-tortious violations, and no court has ever applied Pennsylvania law to this issue. *Compare Adolfo House Distributing Corp. v. Travelers Prop. and Cas. Ins. Co.*, 165 F.Supp.2d 1332, 1341–42 (S.D.Fla.2001) (holding that prior publication exclusion does not apply to non-tortious injuries—fact that "oral or written publication" language in first publication exclusion mimics coverage provisions for tortious advertising injuries suggests exclusion was not intended to apply to misappropriation or infringement advertising injuries and fact that courts are split on whether language is ambiguous demonstrates its ambiguity); *Irons Home Builders, Inc. v. Auto–Owners Ins. Co.*, 839 F.Supp. 1260, 1264–65 (E.D.Mich.1993) (same); *Arnette Optic Illusions Inc. v. ITT Hartford*, 43 F.Supp.2d 1088, 1096 (C.D.Cal.1998) (same); David A. Gauntlett, *Insurance Coverage of Intellectual Property Assets* § 3.03 (Aspen Publishers, Inc.2000) (explaining that exception should only apply to torts and not other types of advertising injury) *with Maxtech Holding Inc., v. Federal Ins. Co.*, No. 98–56729, 1999 WL 1038281 (9th Cir. Nov. 12, 1999) (language is not ambiguous because the exception follows the words "advertising injury" in quotes, and since advertising injury is defined elsewhere the exception should apply to all types of advertising injury); *Applied Bolting Tech. Products, Inc. v. United States Fid. & Guar. Co.*, 942 F.Supp. 1029 (E.D.Pa.1996) (same, applying Vermont law). I need not reach this issue because defendants have not alleged any injurious/infringing publication prior to the policy period, so even if the exclusion applies to trademark actions it does not apply here.

**3.** In my order dated August 8, 2001, dkt. no. 12, I noted that in *Air Products & Chem., Inc. v. Hartford Accident & Indem.*, 25 F.3d 177, 180 (3d Cir.1994), the Third Circuit held that under Pennsylvania law a court may not consider extrinsic evidence offered by the insurer to demonstrate that a policy exclusion negates the insurer's duty to defend. Accordingly, I told the parties that I would only look at the facts alleged in the complaint and the policy language in deciding the duty to defend unless the parties offered authority contradicting *Air Products*.

Defendants primarily argued that *Madison Construction Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106–7 (1999) abrogated *Air Products sub silentio*, because there the court allowed the insurer to introduce extrinsic evidence about a floor coating described in the complaint in order to show that the "pollutant" policy exclusion applied. I do not think that *Madison* changed the general rule that an insurer's duty to defend must be determined based on the policy language and facts alleged in an underlying complaint, because the court explained that it was admitting the evidence to determine whether the language of the policy exclusion was ambiguous, which is a step in the analysis prior to the duty to defend. *Id.*

In any case, even if the extrinsic evidence offered by defendants were admissible, the insurer[s] would still have a duty to defend because when they withdrew coverage they had no evidence that any publication by Maddox prior to the policy period infringed on Cvetnic's trademark, and that is exactly what they would need to show in order for the prior publication exclusion—as I have interpreted it—to apply in this case.

Moreover, defendants would not be entitled to further discovery on infringement because

claims remain potentially within the scope of coverage, the contracting insurer[s] have a duty to defend.

Finally, defendant St. Paul claims that although the policy might give rise to a duty to defend, it has no such duty because it "did not issue the policies in question to plaintiff, only USF & G did." Dkt. no. 15, at 21. But Maddox's policies for the years 1998 through 2002 have the words: "The St. Paul Business Foundation Series" in bolded letters at the top of many of the pages with "St. Paul" in each corner. Dkt. no. 16, Ex. 8–11. These policies also state that the insured should direct any questions to his "St. Paul representative." *Id.* Moreover, the St. Paul's claim specialist, in her March 21, 2000 letter to plaintiff, referred to the 1998 policy as a "St. Paul/ USF & G" policy. Dkt. no. 4, Ex. 4.[4] Therefore, there is an issue of material fact as to whether St. Paul is a party to any of the insurance contracts, and has a corresponding duty to defend.

Accordingly, this 27th day of December 2001, it is hereby ORDERED that plaintiff's motion for partial summary judgment, dkt. no. 16, is GRANTED with respect to USF & G and DENIED with respect to St. Paul, and defendant's motion for partial summary judgment, dkt. no. 14, is DENIED. It is further ORDERED and DIRECTED that plaintiff's motion for

a temporary restraining order, dkt. no. 4, is DENIED without prejudice as moot.

---

in *Madison* the court considered only extrinsic evidence that developed in more detail the facts forming the cause of action in the underlying complaint. *See Madison,* 735 A.2d at 106–7 (where the underlying complaint alleged that one of Madison's employees fainted as a result of inhaling fumes from the floor coating, the court considered extrinsic evidence on the chemicals contained within that floor coating and the fact that such chemicals were considered irritants). The only infringement alleged in Cvetnic's complaint took place after the beginning of the policy period, subsequent to his registration of trademark in 1996, dkt. no. 1, ex. 2, at 8, and so no evidence on infringement prior to that date would be admissible.

4. Although the parties do not address the relationship between St. Paul and USF & G, St. Paul appears to be a parent company to USF & G since all of the correspondence from defendants to plaintiff has been on St. Paul letterhead, including the letter in which St. Paul said USF & G would undertake the defense of the *Cvetnic* action, and the letter in which USF & G withdrew coverage. Dkt. no. 4, Exs. 4, 5, 10, 12, 19.