Interlocken v. Markel Insurance      CV-02-298-B    03/04/03

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Interlocken International Camp, Inc.
d/b/a Interlocken Center for
Experiential Learning

    v.                        Civil No. 02-298-B
                                  Opinion No. 2003 DNH 030

Markel Insurance Company


## MEMORANDUM AND ORDER


This declaratory judgment action arises from an underlying lawsuit in which Interlochen Center for the Arts has sued Interlocken International Camp, Inc. ("IIC") for allegedly misusing the name "Interlocken" in its internet domain name, on its website, and in its advertising. IIC argues that its insurer, Markel Insurance Company, must defend and indemnify it in the underlying action because the action asserts claims for covered "advertising injury."

Markel has filed a summary judgment motion challenging IIC's coverage claim. It argues that because IIC used the name

"Interlocken" in advertisements that were published before it purchased the policies at issue, its claim is subject to a policy exclusion for injuries "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period . . . ." App. to Def's. Mot. for Summ. J. (App.) at 32.

## I. BACKGROUND[1]

### A. The Insurance Policies

Markel insured IIC under commercial general liability policies covering successive periods from 1993 to 1999. Each policy provided coverage for "'advertising injury' caused by an offense committed in the course of advertising [IIC's] goods,

---

[1] I describe the facts in the light most favorable to IIC, the non-moving party. See Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1166 (1st Cir. 2002). The burden of establishing non-coverage is on Markel, see Weeks v. St. Paul Fire & Marine Ins. Co., 140 N.H. 641, 643 (1996). Therefore, I will grant its motion for summary judgment only if the undisputed material facts demonstrate that it has satisfied its burden of proof. See Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998).

products or services." App. at 26.[2] The phrase "advertising injury" is defined as follows:

> 1. "Advertising injury" means injury arising out of one or more of the following offenses:
>
> a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> b. Oral or written publication of material that violates a person's right of privacy;
> c. Misappropriation of advertising ideas of style of doing business; or
> d. Infringement of copyright, title or slogan.

App. at 32. The "advertising injury" coverage is subject to the following pertinent exclusion:

> This insurance does not apply to:
>
> a. . . . 'advertising injury:'
> . . .
> (2) Arising out of oral or written publication of material whose first-publication took place before the beginning of the policy period . . . .

Id.

B. **The Underlying Action**

Interlochen operates the Interlochen Arts Academy, the Interlochen Arts Camp, the Interlochen Arts Festival, the

---

[2] Each policy contained identical coverage and definition language regarding the phrase "advertising injury."

-3-

Interlochen Public Radio Station and the Interlochen Pathfinder School. While it did not seek to register the "Interlochen" trade name until 1997, it has used the name for more than 70 years. As a result, the name "Interlochen" has become widely associated with arts education.

IIC, a New Hampshire corporation, operates summer camps and travel programs for boys and girls. The focal point of these camps and programs is music and art education. IIC first used the name "Interlocken" in 1961. It later used the name in advertisements it published in the New York Times as early as 1964. Since at least 1982, IIC has also used the name in its own newspaper, the "Interlocken Globe." In 1996, IIC registered the internet domain name "www.interlocken.org." Since then it has used its website to advertise its programs and distribute information about IIC to the public.

Interlochen charges in the underlying action that IIC has misused the "Interlocken" name in its domain name, on its web site, and in its promotional materials (i.e., mail, telephone, and fax). Claiming that the name is confusingly similar to its "Interlochen" trade name, Interlochen charges IIC with trademark infringement in violation of 15 U.S.C. § 1114, unfair competition

-4-

and false designation of origin in violation of 15 U.S.C. §
1125(a), trademark dilution in violation of 15 U.S.C. §
1125(c)(1), trademark cybersquatting in violation of 15 U.S.C.
§ 1125(d)(1)(A) and deceptive trade practices in violation of the
Illinois Consumer Fraud and Deceptive Business Practices Act, 815
Ill. Comp. Stat. Ann. 510/1 et seq. (1996). See Interlochen's
Compl., App. at 1-14.

### III.  ANALYSIS[3]

It is undisputed that IIC used the "Interlocken" name in
advertisements and promotional materials long before it purchased
the policies on which its coverage claim is based. The question

---

[3] The parties appear to agree that the policies at issue
are to be construed using New Hampshire law. "[B]ecause there is
at least a 'reasonable relation' between the dispute and the
forum whose law has been selected by the parties, . . ."
Merchants Ins. Co. of N.H., Inc. v. U.S. Fidelity and Guar. Co.,
143 F.3d 5, 8 (1st Cir. 1998) (quotation omitted), I accept the
parties' decision to apply New Hampshire law. Id.
In New Hampshire, the interpretation of insurance policy
language presents a question of law. See Panciocco v. Lawyers
Title Ins. Corp., 794 A.2d 810, 813 (N.H. 2002). Ambiguities are
to be resolved in favor of policyholders. See id. Further, a
court may look beyond the facts pleaded in the underlying
complaint to resolve an insurance coverage claim. See M. Mooney
Corp. v. Fidelity and Guarantee Company, 136 N.H. 463, 469 (N.H.
1992). I apply these basic concepts in resolving this case.

that Markel raises in its summary judgment motion is whether this prior use bars IIC from claiming coverage because of the policies' "first publication" exclusion.[4]

Markel's argument for the application of the exclusion can be summarized as follows: (1) the exclusion plainly applies when the "material" from which the underlying action arises was "first published" before the policy went into effect; (2) the "material" from which Interlochen's claims arise is IIC's use of the confusingly similar "Interlocken" name on its website and in other advertising and promotional materials; and (3) IIC "first published" the "Interlocken" name in advertisements that appeared in the New York Times well before it purchased the policies at issue.

Not surprisingly, IIC construes the exclusion differently.

---

[4] In analyzing this question, I assume without deciding that the underlying action asserts claims for "advertising injury" either because the claims arise from the "misappropriation of advertising ideas or style of doing business," see, e.g., EKCO Group, Inc. v. Travelers Indem. Co. of Ill., 273 F.3d 409, 416 (1st Cir. 2001) (recognizing possibility of covered misappropriation claim where trademark is misappropriated in advertisement), or because they assert claims for "infringement of copyright, title or slogan," see, e.g., Charter Oak Fire Ins. Co. v. Hedeen & Cos., 280 F.3d 730, 736 (7th Cir. 2002) (recognizing that "infringement of . . . Title" includes trademark infringement)).

It argues that the underlying action arises solely from its use of "Interlocken" in its internet domain name.  Thus, it asserts that the "material" that gives rise to the action is the domain name "www.interlocken.org," rather than its other advertising uses of "Interlocken."  Next, it argues that the exclusion is inapplicable because it did not begin to use - and thus did not "first publish" - the domain name until 1996, several years after it had begun purchasing insurance from Markel.  According to IIC, its earlier uses of "Interlocken" in newspaper advertisements is irrelevant because the underlying action is focused solely on the use of the www.interlocken.org domain name.

I reject IIC's argument.  First, the language of the exclusion simply does not support IIC's narrow reading which would limit the exclusion's application to cases in which an infringing trade name was previously used in precisely the same way as the use that provoked the coverage claim.  Second, its interpretation is inconsistent with the exclusion's obvious purpose which is "to prevent an individual who has caused an injury from buying insurance so that he can continue his injurious behavior."  Maddox v. St. Paul Fire and Marine Ins., 179 F.Supp. 2d 527, 530 (W.D. Pa. 2001).  If, as IIC's

-7-

interpretation would permit, a corporation could misappropriate a trade name in a particular advertisement published in one medium and then purchase insurance to cover future infringements using the same name in different advertisements or different media, the exclusion would be of such limited utility that it would be virtually meaningless.  Thus, because IIC used the allegedly infringing name "Interlocken" in advertisements to market its business and services before it purchased insurance from Markel, the first publication exclusion bars it from obtaining coverage for claims that arise from its subsequent uses of the same name, even though those uses were in other advertisements that appeared in different media.[5]

## CONCLUSION

As Markel had no duty under the policies to defend or indemnify IIC against any of the counts in the underlying action,

---

[5] Some courts have held that the first publication exclusion does not apply to misappropriation and infringement claims.  See, e.g., Irons Home Builders, Inc. v. Auto-Owners Ins. Co., 839 F. Supp. 1260, 1264 (E.D. Mich. 1993); but see Applied Bolting Prod., Inc., v. United States Fidelity & Guar. Co., 942 F. Supp. 1029, 1037 (E.D. Pa. 1996).  Because IIC does not press this argument, I make no attempt to evaluate its merits on my own initiative.

Markel's motion for summary judgment (Doc. No. 9) is granted and IIC's cross motion for summary judgment (Doc. No. 11) is denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 4, 2003

cc:  Michael R. Callahan, Esq.
     Andrew D. Dunn, Esq.