TRANSPORTATION INSURANCE
COMPANY

v.

PENNSYLVANIA MANUFACTURERS'
ASSOCIATION INSURANCE
COMPANY, Appellant.

No. 08–4815.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Sept. 21, 2009.

Opinion Filed: Sept. 23, 2009.

Kristin V. Gallagher, Esq., Timothy B. Parlin, Esq., Christopher P. Ward, Esq., Carroll, McNulty & Kull, Basking Ridge, NJ, Ralph J. Luongo, Esq., Susan B. Thauer, Esq., Christie, Pabarue, Mortensen & Young, Philadelphia, PA, for Appellee.

Charles E. Wasilefski, Esq., Peters & Wasilefski, Harrisburg, PA, for Appellant.

Before: BARRY, FISHER and JORDAN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Pennsylvania Manufacturers' Association Insurance Company ("PMAIC") and Transportation Insurance Company ("TIC") issued commercial general liability ("CGL") insurance policies to G & B Specialities ("G & B") that were materially indistinguishable except for the respective coverage period. The TIC policy covered the defense and indemnification of G & B against actions seeking damages for " 'personal and advertising injury' caused by an offense arising out of [its] business ... during the policy period" that extended from April 24, 1999 to April 24, 2000. (App. at 187.) The PMAIC policy provid-

ed the same scope of coverage for the following year—from April 24, 2000 to April 24, 2001. Each policy contained a "prior publication" exclusion, stating: "[t]his insurance does not apply to ... '[p]ersonal and advertising injury' ... [a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (App. at 146, 187.)

The case before us involves a coverage dispute between TIC and PMAIC regarding an action brought by Pohl Corporation against G & B in the U.S. District Court for the Eastern District of Pennsylvania and filed on July 18, 2000 (the "underlying action"). In the underlying action, Pohl alleged that, "[b]eginning in August 1999 and continuing to the [time of filing]," G & B "ha[d] been contacting customers and clients of Pohl" and representing that Pohl's products infringed on a patent held by Norfolk Southern Railway Company ("Norfolk Southern"). (App. at 57.) G & B tendered the underlying claim to TIC and PMAIC in accordance with both policies, seeking defense and indemnification. In October 2000, TIC assumed defense of the action, and continued to defend G & B until July 2006, when G & B entered into a settlement with Pohl. PMAIC, on the other hand, disclaimed coverage, stating that the facts alleged in the underlying complaint did not trigger a duty to defend under the language of its policy.

TIC filed this action on December 11, 2006, seeking, *inter alia*, reimbursement for a share of the costs it incurred in defending and indemnifying G & B. Ruling on cross motions for summary judgment, the District Court found in favor of TIC and ordered PMAIC to pay half of the costs incurred by TIC.

The central issue before the District Court was the same as the issue before us, namely whether the underlying action falls within the PMAIC "prior publication" ex-

clusion. The Court answered that question in the negative, concluding that the relevant "prior publication" exclusion was ambiguous and inapplicable. Although the "prior publication" exclusion has been considered ambiguous in other circumstances, *see, e.g., Maddox v. St. Paul Fire & Marine Life Insurance Co.*, 179 F.Supp.2d 527, 530 (W.D.Pa.2001) (Smith, J.), it is not ambiguous in the circumstances before us. Because the underlying complaint clearly states that *all* of the relevant conduct began in August 1999—more than six months before the PMAIC policy period commenced—we conclude that the "prior publication" exclusion bars coverage, and will reverse.

## I. Background

### A. The Underlying Action

G & B and Pohl are competing manufacturers of railroad switch stands, and, on July 18, 2000, Pohl filed the underlying action against G & B. The complaint states that G & B manufactured railroad switch stands for Norfolk Southern and that it was a licensee of Norfolk Southern's patent on a purportedly improved railroad switch stand. Pohl, however, disputed the enforceability of Norfolk Southern's patent, contending that its elements were neither new nor nonobvious.

Despite the patent dispute, G & B allegedly began contacting Pohl's customers and disparaging the Pohl railroad switch stand. The complaint alleges, in relevant part, that "[b]eginning in August 1999 and continuing to the [time of filing], G & B ha[d] been contacting customers and clients of Pohl and misrepresenting that": "Pohl [was] infringing [on] Norfolk [Southern's] [p]atents"; "Pohl [was] selling railroad switch stand designs that [were] stolen from G & B and Norfolk [Southern]"; and "past and future purchase of Pohl's switch stands constituted [patent] infringement ... for which those customers and

clients would be liable. . . ." (App. at 57.) Pohl claimed that G & B's conduct gave rise to liability because its "misrepresentations and threats" violated Section 43(a) of the Lanham Act, *see* 15 U.S.C. § 1125(a). Pohl also raised three state law claims— unfair competition, commercial disparagement, and tortious interference with business relationships.[1]

## B. The PMAIC Policy

The PMAIC CGL policy purchased by G & B covered a period that extended from April 24, 2000 to April 24, 2001. In general, the policy provided defense and indemnification against " 'personal and advertising injury' caused by an offense arising out of [G & B's] business but only if the offense was committed . . . during the policy period." (App. at 146.) " 'Personal and advertising injury' " was a defined term, which included, in relevant part, an injury "arising out of . . . [o]ral or written publication of material that . . . disparages a person's or organization's goods, products or services." (*Id.* at 153.)

There were, however, a number of exclusions, three of which are relevant here. The PMAIC policy did "not apply to . . . '[p]ersonal and advertising injury' . . . arising out of oral or written publication of material whose first publication took place before the beginning of the policy period" ("prior publication" exclusion). (*Id.* at 146.) Coverage would also not extend if the personal and advertising injury was "[c]aused by . . . the insured with the knowledge that the act would . . . inflict 'personal and advertising injury' " ("intent to injure" exclusion), or if the injury arose "out of oral or written publication of mate-

rial, if done by . . . the insured with knowledge of its falsity" ("knowledge of falsity" exclusion). (*Id.*)

## C. The Present Action

It is undisputed that G & B tendered the underlying claim in October 2000 to both TIC and PMAIC, and that PMAIC disclaimed coverage. After Pohl filed its second amended complaint in July 2003, G & B again requested coverage under the PMAIC policy. Explaining its refusal to extend coverage, PMAIC stated that the second amended complaint did not trigger coverage, and, alternatively, that the above-described exclusions applied. PMAIC reiterated its position by letter dated May 25, 2006.

Following the resolution of the underlying action, TIC filed this action, claiming that it expended in excess of $230,000 in defending G & B, and that, pursuant to an agreement between it and G & B, TIC paid $175,000 towards the settlement G & B reached with Pohl. TIC sought a declaration that, like its policy, PMAIC's policy mandated defense and indemnification. TIC also sought reimbursement for PMAIC's share of the costs it incurred in defending and indemnifying G & B.

The District Court granted summary judgment in favor of TIC. The Court first concluded that the underlying action alleged a "personal and advertising injury" within the ambit of the PMAIC policy, and that PMAIC was obligated to provide coverage unless it could demonstrate that a policy exclusion applied. Next, the Court addressed the "prior publication" exclusion, and concluded that it was ambiguous.

1. The underlying action was consolidated with a declaratory judgment action Pohl had filed against Norfolk Southern on July 25, 2001 seeking a declaration that Norfolk's patent was invalid. Pohl filed a second amended complaint on July 25, 2003, adding, *inter alia*, additional claims of patent invalidity against Norfolk Southern, and two claims that G & B intentionally mismarked its railroad switch products as patented. On July 28, 2006, Pohl and G & B entered into a settlement, which provided that G & B would pay Pohl $250,000 to dispose of the claims against it.

Construing the ambiguity in favor of the insured, the Court concluded that the exclusion did not apply.[2] After concluding that PMAIC had an unmet duty to defend, the District Court held that PMAIC was equitably estopped from asserting that it had no duty to indemnify G & B. Accordingly, the Court found PMAIC liable for half of the defense costs borne by TIC, and for half of the indemnity paid by TIC to G & B.

## II. Discussion

"Our standard of review of a grant of summary judgment is plenary." *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir.2008).[3]

Under Pennsylvania law, which the parties agree is applicable here, the interpretation of an insurance contract regarding the existence of coverage is generally performed by the court. *Id.* at 558; *see Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 897 (2006) ("The interpretation of an insurance policy is a question of law that we will review *de novo*.").

"Our inquiry is straightfoward." *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir.2009). Our first step "is to determine the scope of the policy's coverage," *General Accident Insurance Co. of America v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (1997), and the keystone of that determination is the plain language of the policy. *Nationwide*, 562 F.3d at 595. "When the language of the policy is clear and unambiguous, we must give effect to that language." *Kvaerner*, 908 A.2d at 897 (quotation marks and citation omitted). "However, 'when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract['s] prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls the coverage." *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 938 A.2d 286, 290 (2007) (quoting *Kvaerner*, 908 A.2d at 897); *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 106 (1999) ("We will not ... distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.").

After determining the scope of coverage, we "examine the complaint in the underlying action to ascertain if it triggers coverage," *Allen*, 692 A.2d at 1095, because an insurer's "duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the [underlying] complaint triggers coverage," *Baumhammers*, 938 A.2d at 290 (quotation marks and citation omitted). Our focus, in particular, is on the "factual allegations contained in the [underlying] complaint," *id.* at 291, which are "to be taken as true and liberally construed in favor of the insured," *Frog, Switch, & Mfg. Co.*, 193 F.3d at 746.[4]

---

**2.** Additionally, the Court concluded that while the "intent to injure" and "knowledge of falsity" exclusions may have barred part of the underlying claim, Pohl could have established liability by proving that G & B acted in a reckless or negligent manner. Thus, PMAIC's duty to defend was not extinguished. (*Id.* at 16); *see Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir.1999) ("[I]f a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim").

**3.** The District Court exercised diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction over the final order of the District Court pursuant to 28 U.S.C. § 1291.

**4.** PMAIC challenges only the District Court's determination that it had a duty to defend G & B in the underlying action. The limited nature of PMAIC's appeal impliedly concedes

## A. Scope of Coverage

There is little question that the underlying complaint alleges " 'personal and advertising' injury to which [PMAIC's] insurance applies." (App. at 146.) As defined in the policy, "personal and advertising injury" is an injury arising out of "[o]ral or written publication of material that ... disparages a person's or organization's goods, products or services." (*Id.* at 153.) The underlying complaint alleges precisely such an injury—that G & B had been contacting Pohl's clients and misrepresenting that Pohl's products infringed on an existing patent. The language stressed by PMAIC—that "we will have no duty to defend the insured against any 'suit' seeking damages for 'personal and advertising injury' to which this insurance does not apply" (*id.* at 146)—references not the general scope of coverage, but the exclusions within that scope. It is, simply, an argument that one of three exclusions applies.

## B. "Prior Publication" Exclusion

"Where an insurer relies on a policy exclusion as the basis for its denial of coverage ... the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense." *Madison Constr.*, 735 A.2d at 106. The focus of PMAIC's argument is its "prior publication" exclusion, which denies coverage for any injury "[a]rising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (App. at 146.) "Under the exclusion's plain terms the 'first publication' date is a landmark: if the injurious advertisement was 'first published' before the policy coverage began, then coverage for the 'advertising injury' is excluded." *Applied Bolting Tech. Products v. United States Fid. & Guar. Co.*, 942 F.Supp. 1029, 1036 (E.D.Pa.1996).

Here, the PMAIC policy period began on April 24, 2000. The central factual allegations of the underlying action are that, beginning in August 1999 and continuing until the time of the filing of the complaint, G & B had been contacting customers and clients of Pohl and, *inter alia*, misrepresenting that past and future purchase of Pohl's switch stands constituted patent infringement for which those customers and clients would be liable. There is no indication in the complaint that G & B's alleged misrepresentations changed in substance between when they were first made and the filing of the complaint. G & B's conduct, therefore, falls squarely within the plain language and purpose of the exclusion. *See Maddox,* 179 F.Supp.2d at 530 ("[L]ogically[,] the point of the exclusion is to prevent a[ ] [company that] has caused an injury from buying insurance so that [it] can continue [its] injurious behavior.").[5]

---

that, if it did have a duty to defend, it also must contribute to TIC's indemnity payment. *See Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484, 488 (1959) ("It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company's refusal to defendant at the outset of the controversy is a decision that it makes at its own peril").

**5.** As the Seventh Circuit has stated:

The purpose of the 'prior publication' exclusion (a common clause in liability-insurance contracts, though rarely litigated) can be illustrated most clearly with reference to liability insurance for copyright infringement. Suppose a few months before insurance began on October 7, 1997, the insured published an infringing book that it continued selling after October 6. The 'prior publication' exclusion would bar coverage because the wrongful behavior had begun prior to the effective date of the insurance policy. The purpose of insurance is to spread risk—such as the risk that an advertising campaign might be deemed tortious—and if the risk has already materialized, what is there to insure? The risk has become a certainty.

TIC contends otherwise, arguing that the extent of the injury—and the audience for G & B's misrepresentations—grew after August 1999, and that the exclusion is therefore inapplicable. That argument is unpersuasive, because under the "prior publication" exclusion, "[i]t is irrelevant that later publications, made after the policy became effective, also caused 'advertising injury' or increased the damages." *Applied Bolting*, 942 F.Supp. at 1036. Unless later publications contained "new matter"—i.e. substantively different content—that the underling complaint "allege[d] [were] fresh wrongs," the "prior publication" exclusion applies. *Taco Bell*, 388 F.3d at 1074.

The District Court's conclusion to the contrary relies on *Maddox*, which held that the "prior publication" exclusion "is ambiguous because it is reasonably susceptible to more than one interpretation." 179 F.Supp.2d at 530. As the Supreme Court of Pennsylvania has stated, the terms in an insurance policy "are ambiguous if they are subject to more than one reasonable interpretation *when applied to a particular set of facts.*" *Madison Constr.*, 735 A.2d at 106 (emphasis added). Thus, terms that are straightforward in one context may be ambiguous in the next.

There is little doubt that the exclusion was ambiguous when considered in light of the facts in *Maddox*. There, the insured had performed in a band named "The Marcels" since 1961, and had purchased CGL insurance yearly beginning in 1992. The plaintiff in the underlying action had obtained a trademark for the Marcels mark in June 1996, and subsequently brought suit against the insured alleging trademark infringement. The insurer denied

*Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1072–73 (7th Cir.2004) (Posner, J.) (citation omitted).

coverage, stating that the "lawsuit fell under the '[prior] publication' policy exclusion" because the first publication had occurred prior to the policy period beginning in 1992; the insured brought a declaratory judgment action seeking coverage. *Maddox*, 179 F.Supp.2d at 529. The *Maddox* court concluded that the "prior publication" exclusion was ambiguous under those circumstances, "as a reasonable person in the position of the insured would understand the exception to mean that an advertising injury is only excluded when there was a wrongful publication prior to the policy period...." *Id.* at 530. The underlying complaint, of course, did not allege a prior use of the trademark that pre-dated the insurer's policy period—nor could it, as the policy began in 1992, and the trademark was not registered until 1996.

Here, however, the underlying complaint alleged that G & B misrepresented Pohl's products beginning in 1999. The complaint does not suggest that G & B's publications were, at one point, permissible, and later became injurious. Rather, it alleges that, dating back to August 1999, the publications were *consistently* injurious. Given those facts, the same exclusion that was ambiguous in *Maddox* is unambiguous here: PMAIC's "insurance does not apply to ... '[p]ersonal and advertising injury' ... [a]rising out of oral or written publication of material whose first publication took place before [April 24, 2000]." (App. at 146). Accordingly, the "exclusion in the policy prevents [PMAIC] from having to defend or indemnify" G & B against the underlying action. *See Mutual Ben. Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743, 746 (1999).[6]

6. Because we conclude that PMAIC's prior publication exclusion barred coverage, we need not address the applicability of the "intent to injure" and "knowledge of falsity" exclusions.

### III. Conclusion

We will reverse the judgment of the District Court and remand with directions to enter summary judgment in favor of PMAIC.